## Book *v.* Pennsylvania Railroad Company, Appellant.

*Canals—Pennsylvania canals—Bridges—Pennsylvania Railroad Company—Acts of March 18, 1835, P. L. 75, May 16, 1857, P. L. 519, March 16, 1899, P. L. 9, and May 1, 1866, P. L. 1068.*

Under the acts of March 18, 1835, P. L. 75; May 16, 1857, P. L. 519; March 16, 1899, P. L. 9 and May 1, 1866, P. L. 1068, the Pennsylvania Railroad Company as the owner of the bed of the Pennsylvania canal is bound to maintain the bridges over the canal where public necessity requires it.

Argued May 26, 1903.    Appeal, No. 3, Jan. T., 1903, by defendant, from judgment of C. P. Juniata Co., Dec. T., 1900, No. 53, on verdict for plaintiff in case of George Book v. Pennsylvania Railroad Company.    Before MITCHELL, DEAN, FELL, BROWN and POTTER, JJ.    Affirmed.

Trespass to recover damages for personal injuries.    Before SHULL, P. J.

At the trial it appeared that on July 4, 1900, a crowd of people collected on a foot bridge over the Pennsylvania Canal in Mifflintown to watch a tub race on the Juniata river.    The bridge broke under the crowd, and the plaintiff and other persons were precipitated into the dry bed of the canal, a distance of about sixteen feet.    Plaintiff sustained a fracture of his leg. There was evidence that the footwalk was constructed by the borough of Mifflintown in 1889, and was built on the abutments of the old canal bridge.

The court charged in part as follows:

[There was no duty resting upon the canal company to erect a bridge containing a footway, if the necessity of the place did not require it.    Were it at a point in a city, where travelers on foot and vehicles were almost constantly on the move and frequently large crowds passing back and forth, a footway might prove an absolute necessity, but at a point such as the one now considered, we cannot say, as a matter of law, that such was a necessity, you may judge as to this necessity.    The evidence shows the bridge erected by the canal company to be eighteen feet seven inches in the clear, and if you find

that such structure was sufficient for the accommodation of the traveling public on foot and in vehicles at this place, then no further duty rested upon it to provide anything more commodious and if the borough authorities wished to have a structure to suit its fancy and erected one, even if you find that the canal company's employees extended the caps for the footway, the defendant in this case could not be liable because the borough having erected the footway, assumed the responsibility of its maintenance.] [1]

[If, on the other hand, you find that the footway was a necessity for the place and was essential for the welfare and safety of the traveling public, then it would have been incumbent upon the canal company to erect and maintain the same, and failing to do this, even if the borough did construct it mainly, the canal company were nevertheless liable because it failed to perform a duty and shoulder a responsibility which the law says it should bear.

Thus it appears much devolves upon the question of the necessity of the footway to guide you in your verdict. For if the traveling public had reasonable, safe and proper means of travel without the footway, there was no duty to require its construction and if the borough built it without such necessity it became liable for its maintenance, and it cannot shift the burden on another's shoulder.] [2]

[If the necessity for a footway did not exist and if you find the borough constructed it, then this plaintiff cannot recover. Otherwise we say to you, find for the plaintiff such amount as you think right and proper and as the evidence would warrant.] [3]

[It was the duty of the canal company in 1889, when it rebuilt the bridge, to provide such a bridge as would afford reasonable, safe and commodious and proper means for the use of the traveling public over the said canal, the character of the place and the mode of travel must be taken into consideration in the erection of the bridge. Unfortunately, the evidence of the necessities in this case are not very extensive, but you will have to glean that information from the best source that you may be able to gather the same from the testimony.] [4]

Verdict and judgment for plaintiff for $2,000. Defendant appealed.

*Errors assigned* among others were (1–4) above instructions, quoting them.

*F. M. M. Pennell* and *Louis E. Atkinson*, for appellant.—Our contention is that after the sale of the " land and real estate," no duty to maintain bridges having been imposed upon the vendee by the act authorizing the sale, no liability to maintain bridges should be inferred : Meadville v. Erie Canal Company, 18 Pa. 66 ; Erie v. Erie Canal, 59 Pa. 174 ; Penna. & Ohio Canal Co. v. Commissioners of Portage Co., 27 Ohio St. 14.

A canal company is not bound by the principles of the common law, independent of its charter, to erect or maintain a bridge over the canal where a highway may be laid over the same after its construction : Morris Canal & Banking Co. v. The State, 24 N. J. Law (4 Zabriskie), 62.

There is no precedent for the submission of the necessity for a bridge or footwalk in an action for damages for personal injuries.

In all bridge cases decided in this state, there was notice to rebuild or repair before the municipal authorities undertook to build or repair a bridge : Bean v. Howe, 85 Pa. 260 ; Penna. R. R. Co. v. Irwin Borough, 85 Pa. 336 ; Penna. R. R. Co. v. Duquesne Borough, 46 Pa. 223.

*J. Howard Neely*, with him *Wilberforce Schweyer* and *Andrew Banks*, for appellee.—In the construction of the Pennsylvania canal the state assumed the performance of the duty of constructing and maintaining in a safe condition for the accommodation of the public, the bridges across the Pennsylvania canal where it intersected public highways : Penna. R. R. Co. v. Duquesne Borough, 46 Pa. 223 ; Del. Division Canal Co. v. Commonwealth, 60 Pa. 367 ; Williamsport & Elmira R. R. Co. v. Commonwealth, 33 Pa. 288 ; Phœnixville v. Phœnix Iron Co., 45 Pa. 135 ; Johnson v. Penna. R. R. Co., 2 Chester County Rep. 315 ; Pennsylvania & Ohio Canal Co. v. Graham, 63 Pa. 290.

Where a canal or railroad company is bound to keep a bridge in repair when its line crosses a public highway, it is its duty to provide and maintain such crossing in a reasonably safe and convenient condition so as to meet and provide for the demands

of a reasonable and probable increase of travel and business on the highway of which the bridge forms a part: Phœnixville v. Phœnix Iron Co., 45 Pa. 135; Cooke v. Boston & Lowell R. R. Corporation, 133 Mass. 185; Chartiers & Robinson Turnpike Co. v. Nester, 7 Atl. Repr. 162.

OPINION BY MR. JUSTICE BROWN, October 12, 1903 :

The fundamental question raised on this appeal is, was the Pennsylvania Railroad Company, at the time the foot bridge gave way, bound to maintain a bridge at all over the abandoned canal as a means of approach to the bridge over the Juniata river between Patterson and Mifflintown? After the canal commissioners had constructed the canal at the expense of the state, in pursuance of the Acts of April 11, 1825, P. L. 238, and February 25, 1826, P. L. 55, they were authorized and required by the Act of March 18, 1835, P. L. 75, "to repair or rebuild, and to keep in good condition such bridges on the Pennsylvania canal and rail-ways as were erected at the expense of this commonwealth, before or at the time of completing the said canal and rail-ways." The bridge in the present case was built by the commonwealth when the canal was constructed, and was maintained by the canal commissioners until July 31, 1857, when in pursuance of the Act of May 16, 1857, P. L. 519, the canal was sold to the Pennsylvania Railroad Company as part of the main line of the public works. The act of 1857, authorizing the sale, provided "that the purchasers of said main line shall take the same and its appurtenances, subject to all contracts and arrangements heretofore made by act of assembly or otherwise, for and in respect to the use of such works, and shall carry out the same with all persons interested therein, in the same manner as the commonwealth or its agents are now required to do by law." In Pennsylvania Railroad Company v. Duquesne Borough, 46 Pa. 223, it was held that, though there had been an acknowledgment by the state of its duty to build and maintain necessary public bridges across the canal which it had constructed, it could not have been compelled to discharge such duty, because of its sovereign immunity; but, at the same time, it was decided that an absolute duty had been imposed by the act of 1857 upon the Pennsylvania Railroad Company to maintain such bridges, enforceable against it as a

private corporation. Speaking of this duty, we said: " They took the public works and their 'appurtenances, subject to all contracts and arrangements heretofore made by act of assembly or otherwise, for and in respect to the use of such works,' and were required to 'carry out the same with all persons interested therein, in the same manner as the commonwealth or its agents are now required to do by law.' And we do not think that it is putting any undue strain on the language to make it include canal bridges that are necessary for the public, and which the state had assumed the burden of building and maintaining; for when a common road is cut by a canal, and reconnected by means of a bridge over the canal, such a bridge is an arrangement with the road 'in respect to the use of the canal,' though it is also a part of the road and necessary to *its* use.

" It would be quite unreasonable to suppose that the state was trying to get rid of the duties which it had always acknowledged under any ambiguous or supposed ambiguous clause, or that the defendants purchased the works under the supposition that this clause was so uncertain in its meaning that they might escape from those duties. The most obvious meaning is, that they were to take the works with all their acknowledged appurtenances, servitudes and burdens, and we should be guilty of undue refinement if we should interpret the act otherwise.

" If the state had meant to cast off such a burden as this upon the local authorities, and thus impose on them a new and unusual duty, it would have said so in plain terms. Whatever is doubtfully expressed in any law or writing, ought to be interpreted rather to accord with old usages than to introduce new ones in their stead. When new measures are really intended, it is unnatural to leave them to be discovered by implication, or by a refined analysis of doubtful language.

" But the defendants argue, that because the act of 1835, by which the state assumes this duty, leaves it to the canal commissioners to decide whether the bridge continues to be necessary, therefore the duty was not absolute, and did not pass as one of the burdens of the ownership of the canal. This mode, however, of deciding the question of necessity, grew out of the state's immunity from suit. It could not be sued on its duty,

and that there might be no failure of justice, it required the canal commissioners to judge of the necessity, and to rebuild if it existed, and their judgment was not to depend on their mere pleasure or arbitrary discretion, but on their legal discretion, founded on the facts of each case. And when the public works passed from the state into the hands of a private corporation, then the question of necessity and consequent duty became a mere question of private rights, and passed of course into the jurisdiction of the courts.

"The defendants further argue, that they stand in the place of the state, and as the state could not be coerced to rebuild, so neither can they. But the state, even though acknowledging the duty, could not be coerced, because of its character as state. The defendants having no such character, can have no such immunity. Their private character makes them subject to law, and therefore to action for breach of duty. A duty which cannot be enforced by action, because owed by the state, becomes a subject of action when transferred to private persons."

As the owner of the canal, the Pennsylvania Railroad Company maintained this bridge from July 31, 1857, until March 13, 1867, when it sold the Juniata division to the Pennsylvania canal company. This sale was made in pursuance of the Act of May 1, 1866, P. L. 1068, by which the canal company was incorporated, with authority to purchase, and the Pennsylvania Railroad Company was authorized to sell. The statutory condition of the sale was that the canal company, as purchaser, should be "subject to all the requirements and conditions" under which the conveyance had been made by the state to the Pennsylvania Railroad Company; and the burden of maintaining the bridges that had been erected by the state over the canal passed from the railroad company to the canal company.

During the time of its ownership of the canal the Pennsylvania canal company maintained the bridge and expended money on the same down to and including 1899. In that year, by the Act of March 16, 1899, P. L. 9, it was given authority "to abandon the public use of all that portion of its canal now owned and controlled by it, situated on the Juniata Division, and extending from the first lock east of Newton Hamilton, including the river dam adjacent thereto in Mifflin county

to the Juniata Junction at Duncan's island, in Dauphin
county; and to sell or lease the material thereof, and such
estate as it may possess in the land and real estate on which
the same is situated and which is appurtenant thereto from
time to time as it may deem proper, and make conveyance
thereof." In pursuance of this act the directors of the canal
company, with the approval of the stockholders, abandoned the
canal " for the purpose of navigation." Their right to abandon
extended no further. They were authorized " to abandon the
public use " of the canal. The bed of the canal itself, as land,
continued to be the property of the company, and it was
authorized to sell or lease such estate as it possessed in the
same. In pursuance of this authority to sell, the bed of the
canal was sold to the Pennsylvania Railroad Company on Oc-
tober 18, 1899, and the contention of that company, the present
appellant, now is, that, as no duty to maintain the bridge is im-
posed upon it by the act of 1899, under which it bought, no
such duty exists. In this we cannot concur.

In the act of 1899, authorizing the abandonment of the pub-
lic use of the canal, there is no relief given to the purchaser
from the statutory duty which had rested upon the canal com-
pany, the grantor, and the Pennsylvania Railroad Company,
its grantor, of maintaining necessary public bridges that had
been erected by the state across the waterway. The public
use of the canal itself could be abandoned; but, as the public
necessity for the bridges which arose in the first instance from
the digging of the canal, continued, they could not be aban-
doned, and the corporate duty of the canal company to continue
to maintain them still rested upon it. It was to continue in ·
the ownership of the bed of the canal, to make such use of the
estate it possessed by selling or leasing the same, as it saw fit;
but, until it sold or leased, to it alone the public were clearly
to continue to look for the proper maintenance of necessary
bridges ; and, when it sold the estate it possessed, which, by
the plainest statutory enactment, it had held with the assumed
duty of maintaining the bridges over the canal, that estate
passed to the purchaser with the burden unremoved. By the
abandonment of the public use of the canal, which had become
unprofitable after the flood of 1889, the canal company had
not been deprived of its enjoyment of the land. That continued

to be of value and, as stated, was subsequently purchased by the appellant.

To say nothing of the apparent and obvious easement which the public were enjoying over the canal, and which the Pennsylvania Railroad Company, as a purchaser, must have noticed, it had statuory notice as far back as 1857, when it first became the purchaser of the public works, that it would be bound to maintain the bridges. It took its deed from the state, containing a clause, inserted as a statutory condition of the sale, that its duty would be to perform all the contracts and arrangements theretofore "lawfully made by act of assembly or otherwise for and in respect to the use of such works and to the carrying out of the same with all persons interested therein in the same manner as the commonwealth of Pennsylvania, or its agents, are now required to do by law." At that time the agents of commonwealth were, by the act of 1835, required to maintain the bridges over the canal, and though this duty was not enforceable against the state, it became so, as already stated, against the railroad company : Pennsylvania Railroad Co. v. Duquesne Borough, supra. In the deed from the Pennsylvania Railroad Company to the canal company the same condition appears, and that it does not appear in the last deed of the canal company to the appellant is immaterial, for the estate in the bed of the canal which was acquired by the railroad company is burdened with the duty of maintaining the bridges. That duty has not yet been removed by the state which imposed it; and, so long as the appellant enjoys the estate purchased by it, it must pay one of the considerations for such enjoyment. Its liability is in its privity of estate, and will cease only when such privity ceases.

While the learned trial judge properly instructed the jury that the canal company and the railroad company, its successor in title, were bound to maintain the bridge, he left it to them to say whether, taking into consideration all the circumstances, the railroad company, in maintaining it, ought to have constructed a footway for pedestrians. On this point, the following, which he said of the canal company, applies equally to the appellant: "It was the duty of the canal company in 1889, when it rebuilt the bridge, to provide such a bridge as would

afford reasonably safe and commodious and proper means for the use of the traveling public over the said canal. The character of the place and the amount of travel must be taken into consideration in the erection of its bridge. . . . There was no duty, however, resting upon the canal company to erect a bridge containing a footway, if the necessity of the place did not require it. Were it at a point in the city, where travelers on foot and vehicles were almost constantly on the move and frequently large crowds pass back and forth, a footway might prove an absolute necessity, but at a point such as the one now considered, we cannot say, as a matter of law, that such was a necessity. You may judge as to this necessity. The evidence shows the bridge erected by the canal company to be eighteen feet seven inches in the clear, and if you find that such structure was sufficient for the accommodation of the traveling public on foot and in vehicles at this place, then no further duty rested upon it to provide anything more commodious, and if the borough authorities wished to have a structure to suit its fancy, and erected one, even if you find that the canal company's employees extended the caps for the footway, the defendant in this case could not be liable because the borough, having erected the footway, assumed the responsibility of its maintenance. The borough could not impose a duty upon the canal that it was not bound to assume under the law. . . . If, on the other hand, you find that the footway was a necessity for the place and was essential for the welfare and safety of the traveling public, then it would have been incumbent upon the canal company to erect and maintain the same." If there was a public necessity for the footway, as the jury have found, the duty of properly constructing and maintaining the same was upon the appellant, and from this duty the railroad company cannot relieve itself, either by attempting to impose it upon another or allowing a volunteer, such as the borough of Mifflintown seems to have been, to perform it.

From the answers to the twelfth, thirteenth, fourteenth, fifteenth and sixteenth points submitted by the defendant, the jury clearly understood that the plaintiff could not recover, if they found that the footway had been safe for the ordinary use of it by the public, and gave way under the extraordinary

strain of the unusual crowd upon it. Upon a careful review of this record we have failed to discover any error that calls for a retrial of the case.

Judgment affirmed.